UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PNC BANK, NATIONAL ASSOCIATION                    Plaintiffs/Counter-Defendants
and COLUMBIA HOUSING SLP
CORPORATION

v.                                                Civil Action No. 3:21-cv-198-RGJ

MARK T. WRIGHT, et al.                            Defendants/Counter-Claimants/
                                                          Third-Party Plaintiffs

v.

CLAYTON AYLMER and DAVID                          Third-Party Defendants
HASSELWANDER

* * * * *

## MEMORANDUM OPINION & ORDER

PNC Bank, National Association ("PNC Bank") and Columbia Housing SLP Corporation

("Columbia" together with PNC Bank, "PNC") move to dismiss the Counterclaims [DE 15] and

Third-Party Complaint [DE 16] pursuant to Federal Rule of Civil Procedure 12(b)(6).  [DE 24].

Mark T. Wright ("Wright"), Caryn A. Winter ("Winter"), and Oracle Consulting Services, LLC

("Oracle Consulting" together with Wright and Winter, "Oracle") responded [DE 27] and PNC

replied [DE 30].  This matter is ripe.  For the reasons below, the Court will **GRANT** in part

and **DENY** in part PNC's Motion to Dismiss [DE 24].

## I.       BACKGROUND

This action involves two limited partnerships that were formed for the purpose of

developing low-income housing tax credit apartment complexes: Louisville Historic Rising 2014,

LP ("LHR") and Bridgeport South Frankfort 2014, LLP ("BSF").  [DE 24 at 913].  Both

partnerships are governed by partnership agreements attached to PNC's Complaint.  [DE 1-1; DE

1-2].  PNC Bank and Columbia are both limited partners in both partnerships.  [DE 24 at 913].

1

Oracle Consulting served as a Class B Limited Partner in LHR and BSF.  [*Id.*].  Wright and Winter acted as Oracle Consulting's primary representatives.  [DE 16 at 619].  Wright and Winter also signed guaranty agreements that guaranteed the obligations of Oracle Consulting.  [DE 1-3; DE 1-4].  Clayton Aylmer ("Aylmer") and David Hasselwander ("Hasselwander" together with Aylmer, "Third-Party Defendants") were employed by PNC Bank as vice presidents and directors.  [*Id.* at 618].  The Third-Party Defendants acted as PNC's primary representatives.  [*Id.* at 619].

As a Class B Limited Partner, Oracle possessed the right to take over the responsibilities of the General Partner in certain circumstances where an Event of Default is imminent:

> Notwithstanding anything to the contrary herein, the Class B Limited Partner shall be authorized to exercise the powers of the General Partner if it reasonably believes that an Event of Default is imminent, the General Partner has failed to act timely and such failure result in an Event of Default with the passing of time: provided, further, in no event shall the Class B Limited Partner take any action unless such action is permitted to be taken by the General Partner.

[DE 1-1 at 59; DE 1-2 at 178].  Around March 2020, the parties became aware that the General Partners were in default on a partnership loan.  [DE 15 at 335; DE 24 at 914].  The parties began negotiations regarding the default, but they dispute the productivity of these negotiations.  [DE 15 at 335; DE 24 at 915].  Oracle alleges that it would have exercised its right to cure under the partnership agreements if not for PNC's "promises, encouragements, and inducements to cure the problems through amendment."  [DE 15 at 335].

In August 2020, Third-Party Defendants began negotiating with Oracle to remove Oracle Consulting as Class B Limited Partner and Winter and Wright as Guarantors from both agreements through amendment if Oracle Consulting would contribute a $42,000.00 developer's fee.  [*Id.*].  Oracle further alleges that PNC's promises, inducements, and representations that these amendments would fully resolve Oracle's obligations under the agreements and guarantees, convinced it not to exercise its option to cure the default under the partnership agreements.  [*Id.* at

336].  Instead, Oracle entered into negotiations with PNC and Third-Party Defendants regarding amendments to the partnership agreements.  [*Id.*].

Oracle alleges that by December 10, 2020, the parties had reached an agreement on the amendments with only a few minor items left to resolve.  [*Id.*].  However, PNC contends that it had not reached an agreement on the proposed amendments and continued to have concerns regarding liability for partnership obligations.  [DE 24 at 916].  Though disputed, Oracle argues that PNC and Third-Party Defendants then tried to extort Oracle into paying "vastly higher sums than the $42,000.00 agreement."  [DE 15 at 336].  Around January 2021, PNC and Third-Party Defendants sent Oracle two notices of default demanding payments for "partnership debts" in the amount of $115,000 and $90,000, as well as tax lien and mortgage payments.  [*Id.*].  On February 10, 2021, Oracle sent PNC and Third-Party Defendants a letter requesting the parties abide by the terms of the agreed upon amendments.  [*Id.* at 337].  PNC now allege Oracle owes an amount in excess of $555,000.

PNC sued Oracle alleging breach of the LHR partnership agreement, breach of the BSF partnership agreement and requesting enforcement of the LHR guaranty and BSF guaranty.  [DE 1 at 15–18].   Oracle answered and alleged five counterclaims against PNC, including fraud in the inducement/fraudulent misrepresentation, negligent misrepresentation, breach of contract, promissory estoppel, and equitable estoppel.  [DE 15 at 337–42].  Oracle also filed a third-party complaint against the Third-Party Defendants alleging fraud in the inducement/fraudulent misrepresentation and negligent misrepresentation.  [DE 16 at 623–24].  The Parties vehemently dispute the facts and their characterization.  Because PNC is the moving party, the Court must accept Oracle's version of the facts as true.

## II.     STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]"  To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  As stated, when considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party.  *See Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).  "But the district court need not accept a bare assertion of legal conclusions."  *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief."  *Southfield Educ. Ass'n v. Southfield Bd. Of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

## III.     ANALYSIS

PNC seeks to dismiss Oracle's claims and counterclaims under Federal Rule of Civil

Procedure 12(b)(6).  [DE 24].  In response, Oracle asserts that PNC's motion must fail because it relies on evidence outside of the pleadings.  [DE 27 at 1109–10].

### A. Breach of Contract

PNC first argues that Oracle's counterclaim for breach of contract must fail.  [DE 24 at 922].  PNC contends that the parties did not manifest the requisite intent to be bound [*id.*] and the contract would fail to satisfy the statute of frauds [*id.* at 925].  Oracle contends that it has alleged the parties possessed the requisite intent to be bound.  [DE 27 at 1111].  Oracle also argues that the statute of frauds is inapplicable to this dispute.  [*Id.* at 1112].

#### i. Intent to be Bound

To support its argument that the parties did not have the requisite intent to be bound, PNC cites to several exhibits.  [DE 24 at 922].  Oracle argues that this evidence cannot be considered at the motion to dismiss stage. [DE 27 at 1111–12].  As a threshold matter, the Court must determine whether it can consider PNC's extrinsic evidence.

"Rule 12(b)(6), besides some minor exceptions, does not permit courts to consider evidence extrinsic to the pleadings." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)).  The Court may consider "the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein." *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).  However, the Sixth Circuit is reluctant to consider extrinsic evidence at the motion to dismiss stage that contradicts the allegations in the complaint. *See, e.g.*, *Hart v. Hillsdale Cnty. Mich.*, 973 F.3d 627, n.6 (6th Cir. 2020).

Here, the evidence cited by PNC goes beyond what was originally cited by Oracle.  [DE 27 at 1111].  Moreover, PNC's evidence was included for the purpose of contradicting Oracle's counterclaims.  [DE 24 at 922].  The Sixth Circuit has held that this type of evidence may not be considered at this stage of the litigation.  *See Hart*, 973 F.3d at n.6.  Accordingly, the Court cannot consider additional, extrinsic evidence submitted by PNC.

As the party asserting a breach of contract claim, the burden rests with Oracle to prove the existence of a valid contract as one element of the *prima facie* case.  *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009).  "The fundamental elements of a valid contract are 'offer and acceptance, full and complete terms, and consideration.'"  *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013) (quoting *Commonwealth v. Morseman*, 379 S.W.3d 144, 149 (Ky. 2012)).  With respect to the offer and acceptance, a "meeting of the minds" or a mutual assent is the most essential factor in creating a binding contract.  *Utils. Elec. Mach. Corp. v. Joseph E. Seagram & Sons, Inc.*, 187 S.W.2d 1015, 1018 (Ky. 1945).

"Kentucky law echoes the Sixth Circuit in holding that '[t]he question of the existence of a contract is a question of fact for the jury to answer.'"  *Nat'l Info. & Commc'ns Equip. Network Inc. v. Willigan*, No. 06-cv-28-DLB, 2007 WL 2979928, at *12 (E.D. Ky. Oct. 11, 2007) (quoting *Audiovox Corp. v. Moody*, 737 S.W.2d 468 (Ky. App. 1987)).  The Court cannot dispose of a claim for breach of contract if there is a genuine issue of material fact for the jury.  *See Newton v. Air Sys., Inc.*, No. 3:18-CV-00497-RGJ, 2020 WL 854192, at *2 (W.D. Ky. Feb. 20, 2020) (citing *Bartley v. Handelsman*, 991 F.2d 794 (6th Cir. 1993).

Here, Oracle has demonstrated that there is a genuine issue of material fact that remains.  Oracle alleges that the parties reached an agreement that constituted a meeting of the minds.  [DE 15 at 339].  However, PNC argues there was no meeting of the minds and cites to evidence it

believes contradicts Oracle's claim.  [DE 24 at 922].  This disagreement regarding the existence of a contract must be left to the trier of fact.  *Willigan*, 2007 WL 2979928, at *12.  The Court is prohibited from disposing such a question of fact at this stage.  *See Newton*, 2020 WL 854192, at *2.  Accordingly, the Court will not dismiss Oracle's counterclaim for breach of contract based on the parties' intent to be bound.

   ii.   *Statute of Frauds*

PNC argues that Oracle's counterclaim for breach of contract violates the statute of frauds. [DE 24 at 925].  In response, Oracle argues that the statute of frauds is inapplicable to this dispute. [DE 27 at 1112].

The Kentucky statute of frauds requires "any promise, contract, agreement, undertaking, or commitment to loan money, to grant, extend, or renew credit, or make any financial accommodation to establish or assist a business enterprise or an existing business enterprise . . ." to "be in writing and signed by the party to be charged therewith, or by his authorized agent."  KRS 371.010(9).  Subsequent agreements that materially alter the terms of agreements within the statute of frauds must also meet the statute of frauds' writing requirement.  *Farmers Bank & Trust Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 8 (Ky. 2005).

PNC cites *Fifth Third Bank v. Waxman*, 726 F. Supp. 2d 742 (E.D. Ky. 2010) in support of its argument that the statute of frauds controls.  [DE 24 at 926].  In *Waxman*, a lender attempted to recover from the wife of a borrower who had provided a personal guaranty of repayment of a loan.  *See id.*   The guarantor argued that there was an "overarching agreement" between the parties that her guaranty agreement was only intended to "paper" the file and would never been enforced.  *Id*. at 751.  Because the "overarching agreement" was not in writing, the court found that the guarantor's argument "creates a statute of frauds problem" under KRS 371.010(9).  *Id*.

The court held that the "overarching agreement" would modify the guaranty by making the guaranty meaningless. *See id.* at 752. Because the guaranty agreement was required to be in writing, then the "overarching agreement" must also be in writing. *See id.*

Here, Wright and Winter both signed guaranty agreements that guaranteed the obligations of Oracle Consulting. [DE 1-3; DE 1-4]. Wright and Winter's guaranty agreements required writings to be enforceable. *See* KRS 371.010(9); *Waxman*, 726 F. Supp. 2d at 752. Because the guaranty agreements were required to be in writing, any amendment that would render them meaningless must also be memorialized in writing. *See Willmott Hardwoods, Inc.*, 171 S.W.3d at 8. If the amendments would fully resolve Oracle's obligations under the agreements and guarantees as Oracle has argued [DE 15 at 336], then the amendments would render the guaranty agreements meaningless. *See Waxman*, 726 F. Supp. 2d at 752. Although the amendments must be in writing to be enforceable, Oracle concedes that written versions of the amendments were never executed. [DE 15 at 336; DE 16 at 621]. Oracle's counterclaim for breach of contract must be dismissed because Oracle cannot satisfy the statute of frauds. Accordingly, PNC's Motion to Dismiss [DE 24] is **GRANTED** as to Oracle's counterclaim (Count III) for breach of contract.

### B. Fraud in the Inducement/Fraudulent Misrepresentation

PNC argues that Oracle has failed to plausibly allege a false representation of material fact. [DE 24 at 928]. In response, Oracle alleges that PNC misinterprets Oracle's allegations, misapplies Kentucky law, and mistakenly seeks to invoke extrinsic evidence.

In Kentucky,

[f]raud through misrepresentation requires proof that: (1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff.

*Helm v. Ratterman*, 778 Fed. App'x 359, 371 (6th Cir. 2019) (quoting *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747–48 (Ky. 2011)).

Claims of fraud are subject to a heightened pleading standard where the plaintiff must "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Sixth Circuit has interpreted Rule. 9(b) "to mean a plaintiff must '(1) specify the statement that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 F. App'x 979, 982 (6th Cir. 2017). Additionally, "[a]lthough 'conditions of a person's mind may be alleged generally,' Fed. R. Civ. P. 9(b), the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). "Vague allegations of generic misrepresentations or omissions are not sufficient to survive a Rule 12(b)(6) challenge." *William Beaumont Hosp. Sys*, 677 F. App'x at 983 (citing *Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir. 2008)).

Here, Plaintiff likely satisfies the heightened pleading standard. First, Oracle alleges that it was induced from exercising its cure rights based on PNC's promises and representations that contract amendments based on minimal payments would fully resolve Oracle's obligations under the agreements and guarantees. [DE 15 at 337–38; DE 16 at 622]. Next, Oracle identifies the speakers as Aylmer and Hasselwander, who acted on behalf of PNC Bank. [DE 15 at 337–38; DE 16 at 622]. Oracle also identifies the time period as March 2020 to December 2020. [DE 15 at 335–36; DE 16 at 619–21]. Finally, Oracle has explained that the statements induced it not to

exercise its cure rights under the LHR and BSF partnership agreements.  [DE 15 at 337–38; DE 16 at 622].  Therefore, the Court finds that PNC has satisfied the heightened pleading standard under Rule 9(b).

Oracle also successfully pleads a prima facie case for fraudulent misrepresentation under Kentucky law.  Oracle alleges PNC represented that amendments to the LHR and BSF partnership agreements would fully resolve Oracle's obligations under the agreements and guarantees.  [DE 15 at 337–38; DE 16 at 622].  Oracle further alleges that these representations were false, and that PNC knew these representations were false, which is evidenced by the sums sought by PNC far in excess of the original cure amounts.  [DE 15 at 337; DE 16 at 623].  Oracle contends that PNC intended for Oracle to act upon the misrepresentations, which is evidenced by communications with Aylmer and Hasselwander.  [DE 15 at 337; DE 16 at 623].  Oracle relied on these misrepresentations and did not exercise its right to cure.  [DE 15 at 337; DE 16 at 623].  As a result, Oracle now faces obligations that vastly exceed the original cure amount.  [DE 15 at 337–38; DE 16 at 622–23].  Presuming all of Oracle's factual allegations to be true and making all reasonable inferences in favor of the non-moving party, see *Total Benefits Plan. Agency, Inc.*, 552 F.3d at 434, Oracle has plausibly stated a claim for fraudulent misrepresentation under Kentucky law.  *See Helm*, 778 Fed. App'x at 371.  Accordingly, PNC's Motion to Dismiss [DE 24] is **DENIED** as to Oracle's counterclaims and third-party complaint (Count I) for fraud in the inducement/fraudulent misrepresentation.

### C. Negligent Misrepresentation

PNC argues that Oracle's negligent misrepresentation claims must fail because the evidence suggests that the parties did not reach an agreement on the amendments and because a claim of negligent misrepresentation cannot be premised on the parties' performance of a future

promise.  [DE 24 at 930].  In response, Oracle contends that it has sufficiently alleged claims for fraudulent misrepresentation.  [DE 27 at 1116].

> Under Kentucky law, a claim for negligent misrepresentation may be asserted when:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 580 (Ky. 2004) (quoting Restatement (Second) of Torts § 552 (1977)).

Here, Oracle alleges that Aylmer and Hasselwander, as agents of PNC, represented that Oracle's obligations under the LHR and BSF partnership agreements would be resolved if Oracle would agree to certain amendments.  [DE 15 at 338; DE 16 at 623].  These representations were intended to guide Oracle as the best method for resolving ongoing problems with the General Partners.  [DE 15 at 338; DE 16 at 623–24].  Oracle further alleges that these representations were not made with reasonable care because Aylmer and Hasselwander did not convey the full value of the General Partners' defaults.  [DE 15 at 339; DE 16 at 624].  Instead, Oracle justifiably relied on Aylmer and Hasselwander's representations and pursued negotiations regarding the amendments. [DE 15 at 339; DE 16 at 624].

Presuming all of Oracle's factual allegations to be true and making all reasonable inferences in favor of the non-moving party, see *Total Benefits Plan. Agency, Inc.*, 552 F.3d at 434, Oracle has plausibly stated a claim for negligent misrepresentation under Kentucky law.  *See Presnell Const. Managers, Inc.*, 134 S.W.3d at 580.  PNC's arguments that Oracle could not have reasonably relied on Aylmer and Hasselwander's representations are questions of fact that are not appropriate for a motion to dismiss.  Accordingly, PNC's Motion to Dismiss [DE 24] is **DENIED**

counterclaim and third-party complaint (Count II) for negligent misrepresentation.

### D. Promissory Estoppel

PNC argues that the evidence does not support a claim for promissory estoppel. [DE 24 at 931]. In response, Oracle argues that PNC's contentions are inappropriate for a motion to dismiss. [DE 27 at 1117].

To state a claim for promissory estoppel, plaintiff must allege: 1) a promise, usually oral; 2) the promisor reasonably expects to induce action or inaction; 3) the promisee reasonably relies on the promise as evidenced by either an act or a forbearance; and 4) justice achieved only by enforcement of the oral promise. *Brewer v. Branch Banking & Tr. Corp.*, No. 3:04 CV 573-H, 2005 WL 2100995, at *2 (W.D. Ky. Aug. 26, 2005) (citations omitted). The promisee's reliance on the promise must be reasonable and justified. *See Butler v. Progressive Cas. Ins. Co.*, No. 5:04-cv-84-R, 2005 WL 1009621, at *4 (W.D. Ky. Apr. 25, 2005).

Oracle alleges that PNC, through Aylmer and Hasselwander, made promises to Oracle that it could resolve obligations under the LHR and BSF partnership agreements. [DE 15 at 340]. PNC reasonably expected Oracle to rely on these representations and delay exercising its right to cure. [*Id.*]. PNC's promise did induce Oracle not to exercise its cure rights and take over the duties of the General Partners. [*Id.*]. Finally, Oracle alleges that justice can only be achieved by enforcing PNC's promise because Oracle will otherwise suffer substantial economic harm. [*Id.*]. Presuming all of Oracle's factual allegations to be true and making all reasonable inferences in favor of the non-moving party, see *Total Benefits Plan. Agency, Inc.*, 552 F.3d at 434, Oracle has plausibly stated a claim promissory estoppel under Kentucky law. *See Brewer*, 2005 WL 2100995, at *2. Accordingly, PNC's Motion to Dismiss [DE 24] is **DENIED** as to Oracle's counterclaim (Count IV) for promissory estoppel.

### E.  Equitable Estoppel

PNC argues that Oracle's claim for equitable estoppel must fail because it is not an affirmative cause of action under Kentucky law.  [DE 24 at 932].  Oracle responds that equitable estoppel is an affirmative cause of action and that it has been properly asserted.  [DE 27 at 1118].

Although "[e]quitable estoppel is a defensive doctrine," Kentucky courts have not held that it cannot be asserted as an affirmative cause of action.  *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 594–95 (Ky. 2012).  Under Kentucky law, equitable estoppel has two parts: (1) a material representation by one party, and (2) reliance by the other party.  *See id*.  The Kentucky Supreme Court has outlined a three-part test for each element:

> The essential elements of equitable estoppel are (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010) (alteration omitted) (quoting *Sebastian– Voor Props., LLC v. Lexington–Fayette Urban Cnty. Gov't*, 265 S.W.3d 190, 194–95 (Ky. 2008)). "[T]he existence of an equitable estoppel claim is a question of fact."  *Bd. of Trustees, Ky. Ret. Sys. v. Grant*, 257 S.W.3d 591, 595 (Ky. App. 2008).

Here, Oracle alleges that PNC, through its agents, falsely represented to Oracle that it could eliminate obligations under the LHR and BSF partnership agreements by amending the partnership agreements.  [DE 15 at 341].  PNC knew that these representations were false, and Oracle was expected to rely on these representations.  [*Id.*].  Oracle did not know that engaging in negotiations

related to the amendments as opposed to exercising its cure rights would result in substantially higher obligations. [*Id.*]. Oracle alleges that it relied on PNC's representations. [*Id.*]. Oracle did not exercise its cure rights, which it alleges resulted in greater obligations under the partnership agreements. [*Id.*]. Accepting these allegations as true, Oracle has successfully alleged a claim for equitable estoppel. *Fluke Corp.*, 306 S.W.3d at 62. Moreover, Oracle's claim raises questions of fact that are not appropriate for a motion to dismiss. *See Grant*, 257 S.W.3d at 595. PNC's Motion to Dismiss [DE 24] is **DENIED** as to Oracle's counterclaim (Count V) for equitable estoppel.

## IV.   CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1. PNC's Motion to Dismiss [DE 24] is **GRANTED** as to Oracle's counterclaim (Count III) for breach of contract;

2. PNC's Motion to Dismiss [DE 24] is **DENIED** as to Oracle's counterclaims and third-party complaint (Count I) for fraud in the inducement/fraudulent misrepresentation;

3. PNC's Motion to Dismiss [DE 24] is **DENIED** counterclaim and third-party complaint (Count II) for negligent misrepresentation;

4. PNC's Motion to Dismiss [DE 24] is **DENIED** as to Oracle's counterclaim (Count IV) for promissory estoppel;

5. PNC's Motion to Dismiss [DE 24] is **DENIED** as to Oracle's counterclaim (Count V) for equitable estoppel; and

6. The Court will refer this matter to the Magistrate Judge for litigation planning and a Rule 16 conference by separate order.

Rebecca Grady Jennings, District Judge
United States District Court

September 27, 2022